UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Britt M. Fouks and Brian F. Hupperts,
on behalf of themselves and all others
similarly situated,

          Plaintiffs,

v.

Red Wing Hotel Corporation
d/b/a St. James Hotel, Veranda, Clara's Gift
Shop, Jimmy's Pub, Port Restaurant, and Shoe
Box Café,

          Defendant.

Case No. 12-CV-2160 (JNE/FLN)
ORDER

This case, filed as a putative class action, arises out of Defendant St. James Hotel's alleged willful failure to properly redact its customers' debit and credit card numbers from its receipts in violation of the Fair and Accurate Credit Transaction Act's ("FACTA") truncation requirement at 15 U.S.C.§ 1681c(g). The Amended Complaint does not allege that Plaintiffs suffered any actual injury and seeks only statutory damages, which are capped at $1,000 for each violation, and punitive damages. *See* 15 U.S.C. § 1681n(a).

The parties reached a tentative settlement at a conference with the Magistrate Judge. This Court subsequently issued an Order Preliminarily Approving Class Action Settlement, ECF No. 26, in which it certified the class for settlement purposes and appointed Plaintiffs as class representatives and Plaintiffs' counsel as class counsel. The certified class is defined there as "all persons residing in Minnesota and Wisconsin who, during the time period from May 11, 2011, through August 31, 2012, inclusive, used a personal credit or debit card at St. James Hotel and received a receipt that contained more than 5 digits of the credit or debit card."

1

Now before the Court are Plaintiffs' Motion for Final Approval of Class Action Settlement, ECF No. 29, and Motion for Attorney's Fees and Costs, ECF No. 33. For the reasons that follow, the Court grants final approval to the settlement with the modification described below and denies without prejudice the motion for attorney's fees and costs.

## Discussion

I.  **Motion for Final Approval of Class Action Settlement.**

The parties seek final approval of their proposed settlement in which the Defendant would provide to the 161 class members who timely submitted claims a voucher for either 40% off a stay at the St. James Hotel (not to exceed a $500 value) or 30% off a meal at the hotel's restaurant (not including alcohol and not to exceed a $100 value). The vouchers are good for one transaction only, not transferable or redeemable for cash, and may only be redeemed during a nine-month period that the parties anticipate will run from January 1, 2014 to October 1, 2014. Under the terms of the settlement, the Defendant would also make direct cash payments of $4,000 to both of the class representatives and a cy pres donation of $20,000 to the Red Wing Environmental Learning Center within ten days of the Court's final approval.

A. **Standard of review.**

Though a proposed class action settlement is "presumptively valid," the Court need not and should not "automatically approve anything the parties set before it." *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 921 F.2d 1371, 1383, 1391 (8th Cir. 1990). Indeed, Federal Rule of Civil Procedure 23(e) "requires the court to intrude on [the parties'] private consensual agreement . . . as a fiduciary, serving as a guardian of the rights of absent

class members." *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922, 932, 934 (8th Cir. 2005) (internal citation omitted). As a fiduciary, the Court has a duty to the absent class members to "ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* at 934 (internal citation omitted).

In assessing whether the proposed settlement satisfies the "fair, adequate, and reasonable" standard, the Court considers: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *In re Wireless Telephone*, 396 F.3d at 932. (internal citation omitted). The first consideration carries the most weight. *Id.*

Because this proposed settlement would provide plaintiff class members with "vouchers" that would require them to purchase more of the defendant's goods and services in order to receive a discount, the provision of the Class Action Fairness Act of 2005 ("CAFA") regarding coupon settlements at 28 U.S.C. § 1712 is also applicable here. That statute specifies that, where a proposed settlement includes the award of coupons to class members, "the court may approve the proposed settlement only [upon] making a written finding that . . . the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e).

**B. The proposed settlement warrants final approval only with a reduction to the class representative awards.**

Having considered all of the relevant factors, the Court notes in particular the difficulty FACTA plaintiffs who seek only statutory damages may encounter in proving the defendant's

3

willful non-compliance where the case does not settle and proceeds to trial. In addition, the Court takes note that no class member has objected to the proposed settlement. Those factors cut in favor of final approval of the settlement, but the Court is uneasy about the difference in kind and amount between the $4,000 cash payments Plaintiffs seek for themselves and the far less valuable coupons that they deem adequate for the other class members.

Plaintiffs acknowledge that they have suffered no actual injury and that their recovery of statutory damages would therefore be capped at $1,000 each. Nevertheless, they argue that the proposed $4,000 class representative award payments to them are justified as an "incentive award" or "reimbursement" for the time spent and risk assumed in pursuing this litigation.

In support of their argument, Plaintiffs cite *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002), which in turn cites *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998), for the proposition that incentive awards are appropriate in certain circumstances such as these where the named plaintiff has taken action to protect the interests of a class. However, Plaintiffs quote, but fail to satisfy, the prerequisite expressed in those cases that "an incentive award is appropriate *if it is necessary to induce an individual to participate in the suit*." *Id.* (emphasis added). Indeed, the *Cook* court explained that the "most significant[]" factor justifying an incentive award there was that "in filing the suit, [the named plaintiff] reasonably feared workplace retaliation." *Id. See also In re U.S. Bancorp*, 291 F.3d a1038 (approving class representative awards of $2,000 where plaintiffs achieved a settlement on behalf of the class valued at $3.5 million). Here, Plaintiffs have put forth no evidence or argument that persuades the Court that they required any enticement beyond their potential statutory recovery to bring this case, or that their actions in prosecuting it are deserving of a reward.

Plaintiffs also cite to *In re Plastic Tableware Antitrust Litigation*, a 1995 case from the Eastern District of Pennsylvania. 1995 WL 723175 (E.D.Pa. Dec. 4, 1995). That court listed as "[f]actors to consider when assessing incentive awards" the following:

> (a) the risk to the plaintiff in commencing suit, both financially and otherwise; (b) the notoriety and/or personal difficulties encountered by the representative plaintiff; (c) the extent of the plaintiff's personal involvement in the suit in terms of discovery responsibilities and/or testimony at depositions or trial; (d) the duration of the litigation; and (e) the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.

Id. at *2. However, even after reciting these factors in their memorandum, Plaintiffs fail to explain how they apply to the circumstances at hand, apparently believing it to suffice that they have "actively participated" and "dedicated over forty hours of their time" to the litigation.

On these minimal facts, however, the Court is not persuaded by Plaintiffs' contention that they each deserve four times the maximum recovery possible under the statute for "taking [this] difficult path and enforcing Congress' consumer protection legislation." There is simply no evidence before the Court that the Plaintiffs faced any risks or burdens in undertaking this litigation, or that there exist any other factors that would justify the amount they seek, whether styled as an incentive award or reimbursement.

To the contrary, this case was not strongly contested, as settlement negotiations began in the earliest stages of the litigation; demanded very little of the Plaintiffs individually; did not implicate the public interest; and presented no novel, complex, or controversial issues. In fact, it is but the latest in a long line of strikingly similar Fair Credit Reporting Act ("FCRA") suits brought in this district by Plaintiffs' counsel, at least two of which have included Plaintiff Hupperts as a class representative. *See Ebert et al v. Warners' Stellian Co., Inc.*, No. 11-cv-2325 (JRT/SER); *Hupperts v. APOGEE Retail, LLC*, No. 12-cv-00915 (TNL). Plaintiff Hupperts was not even involved from the beginning of this litigation, but was added in the Amended

5

Complaint almost three months after settlement discussions began and slightly more than two months before the settlement was reached.

Therefore, in consideration of all of the relevant factors, the Court finds that the proposed settlement warrants final approval, but only with a significant reduction to the proposed awards to the two class representatives. Owing to the nature of this litigation and the facts of this case's history, the Court determines that a reduction of the class representative awards to $1,000 for Plaintiff Fouks and $500 for Plaintiff Hupperts is necessary to render the settlement as a whole fair, adequate, and reasonable.

In light of the parties' agreement in the Stipulation of Settlement that the Court may in its discretion award the class representatives any amount up to $4,000, ECF No. 22-2 at ¶ 6(a), the Court modifies the class representative awards accordingly and grants final approval to the settlement as so modified.

## II.     Motion for Attorney's Fees and Costs.

The parties reached a "clear-sailing" agreement during their settlement negotiations that Defendant would not oppose an award of attorney's fees and costs to Plaintiffs' counsel in an amount up to $65,000. The parties also agreed that "allowance or disallowance by the Court of all or any part of the Fee Petition is not a condition of the settlement . . ." *Id.* at ¶ 6(d). Plaintiffs' counsel has accordingly filed an unopposed Motion for Attorney's Fees and Costs, separate from the Motion for Final Approval, requesting that the Court approve a $65,000 award based on a lodestar analysis. ECF No. 33.

### A. Standard of review.

Under Federal Rule of Civil Procedure 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." In a class action coupon settlement such as this, the Court "has the discretion to use either a percentage or lodestar method in awarding fees . . . ." *True v. American Honda Motor Co.*, 749 F.Supp.2d 1052, 1077 (C.D.Cal. Feb. 26, 2010). *See* 28 U.S.C. § 1712(a)-(b).

In calculating the lodestar, "any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action" and is "subject to approval by the court." *Id.* § 1712(b)(1)-(2). Where a percentage of the class's recovery is awarded, "the portion of any attorney's fee award to class counsel that is attributable to the award of coupons shall be based on the value to class members of the coupons that are redeemed." *Id.* §1712(a). To determine that value, the Court may "receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed." *Id.* § 1712(d).

### B. Counsel's lodestar calculation is unreasonable.

Here, Plaintiffs' counsel urges the Court to use the lodestar method to find that the $65,000 he seeks is a reasonable award. However, based on the grave concerns described below, the Court finds that a $65,000 award is unreasonably high and that both the 182 hours expended on this case and the $400 hourly rate counsel requests are far in excess of what would be reasonable.

### 1. The hours expended are unreasonable for a case of this nature.

First, counsel argues that it was reasonable for him and his paralegal to spend 182 hours on this short-lived, straightforward case because a favorable settlement was achieved through his efforts. Counsel also suggests that the reasonable number of hours was increased in this case because the Defendant "initially resist[ed]" the claims, thereby creating additional work.

Those arguments are not persuasive. As already noted, the Defendant did not vigorously contest this case. In fact, counsel's own billing paperwork submitted in support of his motion demonstrates that the parties began settlement discussions as early as October 23, 2012, the day the parties appeared before the Magistrate Judge for the Initial Pretrial Conference and less than two months after the Complaint was filed. In addition, there was no motions practice and the Defendant stipulated to counsel's amendment of the Complaint.

Furthermore, the majority of counsel's written submissions in this case are boilerplate. For instance, compare counsel's Complaint, ECF No. 1, Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement, ECF No. 21, Memorandum in Support of Motion for Final Approval of Class Action Settlement, ECF No. 31, and Memorandum in Support of Motion for Attorney's Fees and Costs, ECF No. 35, with those filed in, as but two examples among many, *Zaun v. Al Vento*, No. 11-cv-2024 (PAM/FLN) and *Ebert et al v. Warners' Stellian Co., Inc.*, No. 11-cv-2325 (JRT/SER). Counsel's repetition of boilerplate language and identical arguments from these very similar cases undermines the reasonableness of the hours he claims for drafting and filing these documents here. The cases are not complex. In 2003, Congress required electronically-generated debit and credit card receipts to contain no more than five digits. It takes no more than the fingers on one hand to determine statutory compliance; the hours that counsel claims to have spent here are entirely unreasonable.

The Court is also highly skeptical of the propriety of a number of counsel's other billing entries, such as the 3.04 hours he charges for reviewing an email "regarding dislike for [him] and the lawsuit" and researching how to respond, the 5.79 hours he claims for the settlement conference with the Magistrate Judge that lasted only four hours, and the 6.51 hours he bills for reviewing his files and meeting with Plaintiffs to "check time slips for audit to make sure no duplicative entries" for purposes of his fee petition and their incentive awards.[1]

### 2. The hourly rate counsel requests is exorbitant.

Second, counsel argues that an hourly rate of $400 for his services is reasonable. The touchstone for determining a reasonable hourly rate for an attorney's services is that it be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458-59 (8th Cir. 1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984)). To this end, counsel prepared and submitted a table listing hourly fees purportedly awarded to attorneys in Minnesota consumer financial litigation. Minnesota Consumer Financial Litigation Attorney Rates and Court Awards (ECF No. 36-2). The table reflects a range of fees in federal court from $235 on the low end for an attorney with six years of experience to $450 on the high end for an attorney with 47 years of experience.[2]

---

[1] Counsel's suggestion that he will devote any significant additional time to this case during the voucher redemption period by "answering calls and questions on the settlement voucher" and otherwise "overseeing" the redemption process is also dubious. The parties have retained a third party settlement administrator, paid for by the Defendant, to distribute the coupons by mail. The Court is confident that the class members are fully capable of presenting the coupons at the point of sale for the applicable discount without counsel's assistance.

[2] The Court disregards the rates attributed to the one state court matter that was included in the table.

The Court notes that the majority of entries in this table are for fees awarded either to counsel himself (Thomas J. Lyons, Jr.) or to his father and frequent co-counsel (Thomas J. Lyons). Given this intimate familiarity with the fees litigation counsel includes in his table, the Court is deeply troubled by the misleading entries to be found there. Counsel represents to the Court that he was "awarded" a rate of $400, and his father was "awarded" $450 per hour, in this district as recently as January 2013 in *Zaun v. Al Vento*, No. 11-cv-2024 (PAM/TNL). *See* Declaration in Support of Motion for Attorney Fees at ¶¶ 7-8 (ECF No. 36) (incorporating table of fees by reference into counsel's sworn statement). However, while counsel and his father requested those rates in that case, the court specifically found that "the hourly rate requested for both attorneys in this matter is far too high." Memorandum and Order at 6 (11-cv-2024, ECF No. 58). In light of that conclusion as well as numerous and egregious examples of over-billing and double-billing, the court reduced counsel's lodestar calculation by 75% and awarded just $12,500. Thomas J. Lyons, Jr. has brought more than 1,300 cases in this district. That he selects the *Al Vento* case as an example of having been "awarded" $400 per hour is brazen.

This misrepresentation also leads the Court to conclude that, insofar as counsel relies upon his "skill, experience, and reputation" to justify his proposed rate, the picture he presents to the Court is incomplete without due consideration of his extensive professional disciplinary history. Indeed, counsel has been disciplined no fewer than eight times in 17 years of practice. *In re Petition for Disciplinary Action against Thomas Lyons, Jr., a Minnesota Attorney, Registration No. 249646*, A09-472 at 13-14 (Minn. April 8, 2010). Particularly relevant in light of counsel's misleading representations to this Court regarding his billing rate is the indefinite suspension he incurred in 2010 for making false and misleading statements to opposing counsel during settlement negotiations, to disciplinary investigators, and in testimony before a referee

appointed by the Minnesota Supreme Court to hear the disciplinary petition. *Id.* at 12-13. Counsel was reinstated in late 2011 and has been practicing at all times during this litigation on supervised probation pursuant to that reinstatement order. *In re Petition for Reinstatement of Thomas Lyons, Jr., a Minnesota Attorney, Registration No. 249646*, A11-758 (Minn. Dec. 21, 2011).

Counsel does not acknowledge his suspension in this motion for fees. Nevertheless, it is apparent from a close examination of the cases counsel chose to list in his table that he continued to work on FCRA cases in this district with his father during that period, charging $200 per hour for his services while apparently acting as a paralegal. Counsel includes at least two of these cases in his table, though he conspicuously omits any mention of his own rates. For instance, *Anderson v. Burrito Union et al.*, No. 10-cv-1929 (SRN/JJK) appears twice in the 2012 entries, reflecting awards of both $400 and $450 per hour to counsel's father. Minnesota Consumer Financial Litigation Attorney Rates and Court Awards at 6 (ECF No. 36-2). But the table omits entirely counsel's own requested rates in that case, which were $400 at the outset and conclusion but dipped to $200 for the bulk of the litigation while he was suspended. Similarly, Thomas J. Lyons appears twice in the table ($400 and $450 per hour) for *Moran v. Lurcat, LLC*, No. 10-cv-3031 (JNE/FLN), while Thomas J. Lyons, Jr. ($200 per hour throughout) does not appear at all.

Counsel's lack of candor and his disciplinary history are highly relevant to any analysis of his "skill, experience, and reputation," and here they require a significant reduction to his requested hourly rate. In consideration of all of the factors discussed above, and in light of the fees awarded in similar cases in this district as well as the Court's own knowledge and experience with the prevailing rates in this market, an hourly rate of $275 is appropriate.

## C. The Court defers resolution of this matter until the close of the voucher redemption period.

Aside from the unreasonableness of counsel's billing in this case, the Court is also struck by the remarkable difference between the $65,000 sum counsel seeks and the far more modest value of the coupon settlement provided to the class. In response to the Court's inquiry about this large disparity, counsel emphasizes that the FCRA contains a fee-shifting provision that is intended to provide an incentive for competent counsel to bring suit on behalf of plaintiffs whose potential recovery under the statute is relatively low, and insists that proportionality between the monetary value of the class's recovery and the award of attorney's fees is thus not required.

Be that as it may, what is undoubtedly required is that the award of attorney's fees be reasonable. Where the parties have reached a coupon settlement, the actual monetary value of the coupons redeemed by the class is a prime consideration in that assessment: it is an indispensable factor in evaluating the reasonableness of the lodestar figure, and it is determinative when calculating an award as a percentage of the recovery. *See, e.g., Fed. R. Civ. Pro. 23(h) 2003 advisory committee's notes* ("Settlements involving non-monetary provisions for class members . . . deserve careful scrutiny to ensure that these provisions have actual value to the class."); *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 821 (3rd Cir. 1995) (noting that there "is an advantage to using the alternative [percentage of the recovery] method to double check the fee" and that "the court must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests"); *True*, 749 F.Supp.2d at 1073 (noting that the court must consider "the real monetary value and likely utilization rate of the coupons provided by the settlement" and

that the "lodestar amount is particularly inappropriate where . . . the benefit achieved for the class is small and the lodestar award large") (internal citation and quotation omitted).

Here, following the hearing on the motion, the Court specifically invited counsel to supplement his submissions with a valuation of the vouchers and to explain his methodology for making such a calculation. In response, counsel declined to offer an expert opinion as the parties may do under 28 U.S.C. § 1712(d), concluding that it would not be cost effective given the relative modesty of the proposed settlement. Instead, counsel himself values the "cash savings benefit" to the class from the redemption of the vouchers at $12,000. Counsel reaches this number by estimating that two-thirds of the 161 class members who have claimed the vouchers – 107 people – will actually redeem them; using prices and averages culled from the Defendant's website and an affidavit from its controller to calculate that "the estimated cash savings benefit for the Class is $6,206 if all choose dinner and $12,305 if all choose a hotel stay"; and finding that the redeeming class members will be "enticed" by the "increased value [of the vouchers] for extended stays" at the hotel, such that "it is reasonable to conclude that the cash savings will be closer to, or exceed, the estimated $12,305 in savings if all Class members choose a hotel stay of average duration."

The Court has a number of reservations about counsel's methodology. Perhaps the most glaring flaw is counsel's equation of the value of the redeemed vouchers with the total discounts they are expected to provide. This simplistic analysis "ignores the basic economics of coupons," and "[c]ourts have generally rejected the idea that the face value of coupons or rebates should be used for settlement valuation purposes." *True*, 749 F.Supp.2d at 1075 (cataloguing cases). "[C]ompensation in kind is worth less than cash of the same nominal value," and that is especially so here where the coupon is "not freely transferable on the open market." *Id.* (internal

quotations and citations omitted).  In addition, counsel also does not account for fluctuations in the cost of rooms in Defendant's hotel that may be implemented over the course of the redemption period due to the demand pricing that is common in the hotel industry.

Thus, despite the Court's best efforts to ascertain a reliable valuation from the parties, the actual monetary value of the vouchers remains purely speculative.  Without this information, particularly in combination with the unreliability of the evidence submitted by counsel in support of his motion for fees and costs, the Court determines that the proper course of action is to defer resolution of this matter.

Therefore, the Court denies Plaintiffs' counsel's motion for fees and costs without prejudice.  Counsel may re-file his motion for an award of fees and costs within two months of the close of the voucher redemption period, at which point the actual number of redeemed vouchers and the amounts they were redeemed for can be known with certainty.  If counsel does not submit a motion for fees and costs that is consistent with this decision and includes this additional information by December 1, 2014, the Court will consider the issue abandoned.

THEREFORE, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Final Approval of Class Action Settlement [ECF No. 29] is GRANTED with the modification described above.
2. Plaintiffs' Motion for Attorney's Fees and Costs [ECF No. 33] is DENIED WITHOUT PREJUDICE.

Dated: November 21, 2013         s/Joan N. Ericksen
                                 The Honorable Joan N. Ericksen
                                 United States District Judge